IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| REGIONS BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EGYPTIAN CONCRETE COMPANY, | ) |
| an Illinois Corporation, | ) |
| | ) |
| Serve: Sherri L. Spears, Registered Agent | ) |
| 749 W. Commercial | ) |
| Salem, IL 62881 | ) |
| | ) |
| GLENNON J. BORESI, | ) |
| | ) |
| Serve at: 497 Stagecoach Run | ) |
| Union, MO 63084 | ) |
| | ) |
| LYNN K. BORESI, | ) |
| | ) |
| Serve at: 497 Stagecoach Run | ) |
| Union, MO 63084 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Regions Bank and, for its Complaint against Defendants Egyptian Concrete Company, Glennon J. Boresi and Lynn K. Boresi, alleges and states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Regions Bank (the "**Bank**") is an Alabama state bank with its principal place of business in Birmingham, Alabama.

2. Defendant Egyptian Concrete Company ("Egyptian Concrete") is a corporation organized and existing under the laws of the State of Illinois with its corporate headquarters

located in Washington, Missouri.  Egyptian Concrete operates plants at Salem, Illinois and Bonne Terre, Missouri.

3. Defendant Glennon J. Boresi is an individual who resides in Franklin County, Missouri.

4. Defendant Lynn K. Boresi is an individual who resides in Franklin County, Missouri.

5. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. This court has personal jurisdiction over Defendants in that Egyptian Concrete has entered into contracts in the State of Missouri and has transacted business in the State of Missouri and the Boresis are residents and citizens of Missouri.  In addition, defendants have consented to jurisdiction in this Court.

7. Venue is proper pursuant to 28 U.S.C. § 1391.  In addition, defendants have consented to venue in this Court.

## COUNT I

### Suit on Notes and for Receiver

8. Prior to August 15, 2008, Bank made a series of loans to Egyptian Concrete and, as evidence of the loans, Egyptian Concrete made, executed and delivered to Bank its promissory notes.

9. On or about August 15, 2008, the parties hereto entered into a Loan Modification Agreement.  A true and accurate copy of the Loan Modification Agreement is attached hereto as Exhibit 1.

10. Pursuant to the Loan Modification Agreement, the earlier loans were restructured and consolidated into three notes (collectively referred to as the "Notes").

11. Egyptian Concrete made, executed and delivered to Bank its Amended and Restated Revolving Note dated August 15, 2008 in the principal sum of $7,450,000 (the "Revolving Note"). A true and accurate copy of the Revolving Note is attached hereto as Exhibit 2.

12. The Revolving Note was to mature on January 15, 2009.

13. Egyptian Concrete made, executed and delivered to Bank its Amended and Restated Promissory Note (Term Loan A) dated August 15, 2008 in the principal sum of $1,650,000 (the "Term Loan A Note"). A true and accurate copy of Term Loan A Note is attached hereto as Plaintiff's Exhibit 3 and incorporated herein by reference.

14. Team Loan A Note was to mature on January 15, 2009.

15. Egyptian Concrete made, executed and delivered to Bank its Amended and Restated Promissory Note (Term Loan B) dated August 15, 2008 in the principal sum of $1,600,000 (the "Term Loan B Note"). A true and accurate copy of Term Loan B Note is attached hereto as Plaintiff's Exhibit 4 and incorporated herein by reference.

16. Term Loan B Note was to mature on January 15, 2009.

17. In conjunction with the Notes, Egyptian Concrete made, executed and delivered to Bank its Deed of Trust, Security Agreement, Agreement of Leases and Rents and Fixture Filing dated August 15, 2008 ("Deed of Trust"). A true and accurate copy of the Deed of Trust is attached hereto as Plaintiff's Exhibit 5 and incorporated herein by reference. The Deed of Trust was recorded with the Recorder of Deeds for St. Francois County, Missouri on or about August 22, 2008.

18. The Deed of Trust provides, *inter alia*, that "Immediately upon and in the event of the occurrence of an Event of Default, Beneficiary [Bank] may, without notice to Trustor [Egyptian Concrete] upon petition to any court of competent jurisdiction, which may be ex parte, appoint a receiver for the Premises . . . such receiver also shall have all other powers and rights that may be necessary or are usual in such cases for the production, possession, control, management and operation of the Premises."

19. The Deed of Trust further provides: "At any time after an Event of Default has occurred, Trustor shall, upon demand of Beneficiary, surrender to Beneficiary, or Trustee acting on Beneficiary's behalf, possession of the Premises.  Beneficiary, in its discretion, may, with or without process of law, to extent permissible under Missouri law, enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers and accounts relating thereto, and may exclude Trustor and its employees, agents or servants therefrom, and Beneficiary may then hold, operate, manage and control the Premises, either personally or by its agents."

20. In conjunction with the Notes, Egyptian Concrete made, executed and delivered to Bank its Revolving Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated August 15, 2008 ("Mortgage "). A true and accurate copy of the Mortgage is attached hereto as Plaintiff's Exhibit 6 and incorporated herein by reference.   The Mortgage was recorded with the Recorder of Deeds for Marion County on or about August 19, 2008.

21. The Mortgage provides, *inter alia*, that "Upon or at any time after the filing of a complaint to foreclose this Mortgage, the court in which such complaint is filed shall, upon petition by the Lender, appoint a receiver for the Premises . . . such receiver also shall have all other powers and rights that may be necessary or are usual in such cases for the protection,

possession, control, management and operation of the Premises during said period, including, to the extent permitted by law, the right to lease all or any portion of the Premises for a term that extends beyond the time of such receiver's possession without obtaining prior court approval of such lease. "

22.     The Mortgage further provides that "At any time after an Event of Default has occurred, the Mortgagors shall, upon demand of the Lender, surrender to the Lender possession of the Premises.  The Lender, in its discretion, may, with process of law, enter upon and take and maintain possession of all or any part of the Premises, together with all documents, books, records, papers and accounts relating thereto, and may exclude the Mortgagors and their employees, agents or servants therefrom, and the Lender may then hold, operate, manage and control the Premises, either personally or by its agents."

23.     On or about November 13, 2008, the parties hereto entered into a First Amended Loan Modification Agreement.  A true and accurate copy of the First Amended Loan Modification Agreement is attached hereto as Plaintiff's Exhibit 7 and incorporated herein by reference.

24.     In February 2009, Egyptian Concrete entered into an agreement with Atec Liquidation Inc., d/b/a as ATEC, Inc., Chief Restructuring Officer ("ATEC") (the "ATEC Agreement") to operate the company in ATEC's discretion.  A true and accurate copy of the ATEC Agreement is attached hereto as Exhibit 8.

25.     The ATEC Agreement provides that its purposes were: "(i) to enhance the integrity of operations of the Company, (ii) ensure repayment of the Indebtedness and (iii) provide constant and consistent disclosure to Bank regarding financial and operational matters at Company (collectively, the "Purposes")."

26. On or about April 6, 2009, the parties hereto entered into a Second Amended Loan Modification Agreement. A true and accurate copy of the Second Amended Loan Modification Agreement is attached hereto as Exhibit 9.

27. The Second Amended Loan Modification Agreement, *inter alia*, revised the maturity date of the Notes to May 31, 2009.

28. The Notes, as modified by the Loan Modifications, matured on May 31, 2009 and there have been no further amendments, modifications or extensions of the Notes.

29. Bank is the present owner and holder of the Notes.

30. By letters dated August 5, 2009, Bank advised Egyptian Concrete that the Notes had matured, were due and payable in full and that Egyptian Concrete has failed to pay the Notes (the "Note Demand Letters"). True and accurate copies of the Note Demand Letters are attached hereto as Exhibit 10 and incorporated herein by reference.

31. The indebtedness represented by the Notes is presently due and payable and Egyptian Concrete is obligated to pay the full indebtedness as evidenced by the Notes.

32. As of August 3, 2009, there was due and owing to Bank on the Notes the following amounts:

**Term Loan A Note**
Principal:   $1,532,952.66
Interest:    $25,771.55

**Term Loan B Note**
Principal:   $1,400,986.49
Interest:    $24,220.95

**Revolving Note**
Principal:   $5,055,000.00
Interest:    $78,774.17

33. Interest continues to accrue on the Notes from August 3, 2009 at the default rate of interest as stated in the respective Notes.

34. Pursuant to the terms of each Note, Bank is also entitled to its attorneys' fees and expenses, and other costs and expenses properly chargeable.

35. Despite written demand for payment of this indebtedness being made, Egyptian Concrete has failed, neglected and refused to make payment of this indebtedness.

36. Upon information and belief, Bank is Egyptian Concrete's only broad based secured lender.

37. ATEC has effectively operated Egyptian Concrete since the execution of the ATEC Agreement in February 2009 and has provided constant and consistent disclosure to Bank regarding the financial and operational matters at Egyptian Concrete.

38. Upon information and belief, the financial condition of Egyptian Concrete has continued to deteriorate putting both Egyptian Concrete's viability and the Bank's collateral at risk.

39. Appointment of a receiver is necessary to insure that the Bank's collateral is preserved, collected and paid to Bank by an entity with an economic incentive to achieve good results.

WHEREFORE, Plaintiff Regions Bank respectfully

(1) demands judgment against Defendant Egyptian Concrete on the Notes as follows:

    a) Revolving Note

        i) the principal amount of $5,055,000.00;

        ii) accrued interest through August 3, 2009 of $78,774.17;

    b) Team Loan A Note

        i) the principal amount of $1,532,952.66;

          ii)    accrued interest through August 3, 2009 of $25,771.55;

    c)    Team Loan B Note

          i)    the principal amount of $1,400,986.49;

          ii)    accrued interest through August 3, 2009 of $24,220.95;

    d)    additional interest on the Notes after August 3, 2009 at the default rate of interest until judgment;

    e)    attorneys' fees and costs and other fees and costs as provided by the Notes;

    f)    post-judgment interest as provided by law on the total amount as determined by this Court of the prayer for relief on sub-paragraphs a-e above until paid; and

(2)    requests the immediate appointment of a receiver to take immediate custody and control of Egyptian Concrete; and

(3)    requests such other and further relief as this Court may deem just and equitable.

## COUNT II

### Suit on Guaranty of Notes - Glennon Boresi

40.    Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 39.

41.    In order to induce Bank to make the loans to Egyptian Concrete evidenced by the Notes and in consideration thereof, Defendant Glennon J. Boresi absolutely and unconditionally guaranteed full and punctual payment and satisfaction of the indebtedness of Egyptian Concrete to Bank by a Guaranty of Payment. A true and accurate copy of the Glennon J. Boresi Guaranty of Payment is attached hereto as Exhibit 11 (the "Guaranty") and incorporated herein by reference.

42.    Bank is the present owner and holder of the Notes and the Guaranty.

SLD-1524518-1

43.     Pursuant to the Loan Modifications, Glennon Boresi reaffirmed his Guaranty.

44.     By letters dated August 5, 2009, Bank advised Glennon Boresi that the Notes had matured, were due and payable and that Egyptian Concrete had failed to pay the Notes (the "Guaranty Demand Letters"). True and accurate copies of the Guaranty Demand Letters are attached hereto as Exhibit 12 and made a part hereof.

45.     Despite written demand for payment of the indebtedness being made, Glennon Boresi has failed, neglected and refused to make payment of this indebtedness.

WHEREFORE, Plaintiff Regions Bank respectfully

(1)     demands judgment against Glennon Boresi as follows:

    a)     Revolving Note

        i)     the principal amount of $5,055,000.00;

        ii)    accrued interest through August 3, 2009 of $78,774.17;

    b)     Team Loan A Note

        i)     the principal amount of $1,532,952.66;

        ii)    accrued interest through August 3, 2009 of $25,771.55;

    c)     Team Loan B Note

        i)     the principal amount of $1,400,986.49;

        ii)    accrued interest through August 3, 2009 of $24,220.95;

    d)     additional interest on the Notes after August 3, 2009 at the default rate of interest until judgment;

    e)     attorneys' fees and costs and other fees and costs as provided by the Notes;

    f)     post-judgment interest as provided by law on the total amount as determined by this Court of the prayer for relief on sub-paragraphs a-e above until paid; and

SLD-1524518-1

(2) requests such other and further relief as this Court may deem just and equitable.

## COUNT III

### Suit on Guaranty of Notes - Lynn Boresi

46. Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 45.

47. In order to induce Bank to make the loans to Egyptian Concrete evidenced by the Notes and in consideration thereof, Defendant Lynn K. Boresi absolutely and unconditionally guaranteed full and punctual payment and satisfaction of the indebtedness of Egyptian Concrete to Bank by a Guaranty of Payment. A true and accurate copy of the Lynn K. Boresi Guaranty of Payment was previously attached hereto as Exhibit 11 (the " Guaranty") and incorporated herein by reference.

48. Bank is the present owner and holder of the Notes and the Guaranty.

49. Pursuant to the Loan Modifications, Lynn Boresi reaffirmed her Guaranty.

50. By letters dated August 5, 2009, Bank advised Lynn Boresi that the Notes had matured, were due and payable and that Egyptian Concrete had failed to pay the Notes (the "Guaranty Demand Letters"). True and accurate copies of the Guaranty Demand Letters were previously attached hereto as Exhibit 12 and made a part hereof.

51. Despite written demand for payment of the indebtedness being made, Lynn has failed, neglected and refused to make payment of this indebtedness.

WHEREFORE, Plaintiff Regions Bank respectfully

(1) demands judgment against Lynn Boresi as follows:

    a) Revolving Note

        i) the principal amount of $5,055,000.00;

        ii) accrued interest through August 3, 2009 of $78,774.17;

    b)    Team Loan A Note

        i)    the principal amount of $1,532,952.66;

        ii)    accrued interest through August 3, 2009 of $25,771.55;

    c)    Team Loan B Note

        i)    the principal amount of $1,400,986.49;

        ii)    accrued interest through August 3, 2009 of $24,220.95;

    d)    additional interest on the Notes after August 3, 2009 at the default rate of interest until judgment;

    e)    attorneys' fees and costs and other fees and costs as provided by the Notes;

    f)    post-judgment interest as provided by law on the total amount as determined by this Court of the prayer for relief on sub-paragraphs a-e above until paid; and

    (2)    requests such other and further relief as this Court may deem just and equitable.

HUSCH BLACKWELL SANDERS LLP


By:   /s/ Michael A. Clithero
        Michael A. Clithero, #2829
        Jeffrey S. Heuer, #84470
        190 Carondelet Plaza, Suite 600
        St. Louis, Missouri 63105
        (314) 345-6462
        (314) 480-1505(facsimile)

Attorneys for Plaintiff Regions Bank